NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| LINE ROTHMAN, | Civ. No. 05-4829 (GEB) |
| Plaintiff, | |
| v. | ***MARKMAN* OPINION** |
| TARGET CORP., et al., | |
| Defendants. | |

**BROWN, Chief Judge**

This matter comes before the Court upon the parties' request for claim construction in this patent infringement action. On October 7, 2005, Line Rothman ("Plaintiff") brought suit against J.C. Penney Corporation, Inc., Kohl's Department Stores, Inc., Motherswear International, Inc. and Target Corporation as well as intervenor/defendant Leading Lady Companies (collectively, "Leading Lady Defendants") and Mothers Work, Inc., Federated Department Stores, Inc. and Macy's Department Stores, Inc. (collectively, "Mothers Work Defendants") for infringement of Plaintiff's patents concerning a single patent for nursing garments. In particular, Plaintiff asserts that Defendants' products infringe U.S. Patent No. 6,855,029 B2 ("the '029 patent"), which was issued to Plaintiff on February 15, 2005. The '029 patent includes nineteen claims. On January 18, 2007, the parties submitted a revised Joint Claim Construction Chart which identified the disputed claim terms. There are three terms in dispute: "soft cup frame" in independent claims 1 and 5 and in dependent claim 19, "nursing breast cup" in independent claim 12 and "one continuous piece of fabric" in dependent claims 4, 9 and 16. The parties have agreed to the meaning of "fabric body"

contained in independent claims 1, 5 and 12. In addition, Defendant Mothers Work raises an issue regarding the term "coupled to."

The patent at issue involves a form fitting nursing tank top/undershirt made with a stretch fabric which includes an invisible built in nursing bra. Plaintiff formed a company, Glamourmom, LLC, to manufacture and sell nursing garments embodying the nursing tank design. According to Plaintiff, Glamourmom sells nursing garments in retail stores and on the Internet. The original design was a tank top, and has been incorporated into numerous styles and other garments such as swimsuits, pajamas, dresses and evening gowns. Plaintiff contends that an additional U.S. patent - 7,076,809 - was issued on July 18, 2006, and foreign patents have been granted in Australia and in the European patent office.

**I. DISCUSSION**

    **A. <u>Standard for Claim Construction</u>**

The first step in a patent infringement analysis is to define the meaning and scope of the claims of the patent. <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), <u>aff'd</u>, 517 U.S. 370 (1996). Claim construction, which serves this purpose, is a matter of law exclusively for the court. <u>Id</u>. at 979. The Federal Circuit clarified the proper methodology for claim construction in <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303 (Fed. Cir. 2005). The court stated that the claims of a patent serve as the proper starting point, noting the "bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." <u>Id</u>. at 1312 (citing <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (quotations omitted). The court articulated that words should generally be given

their ordinary and customary meaning – particularly from the vantage point of a person of ordinary skill in the art. Phillips, 415 F.3d at 1313. This provides an objective baseline from which claim construction should begin. Id.

Significantly, the Federal Circuit further noted that a "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. In attempting to discern the meaning of claim terms, the court identified various sources from which the proper meaning may be determined. The claim in which the term appears and other claims of a patent, including both asserted and unasserted claims, can serve as "valuable sources of enlightenment as to the meaning of the claim term." Id. at 1314.

The court also emphasized the primacy of the specification in a claim construction analysis, noting that it is usually dispositive and "the single best guide to the meaning of a disputed term." Id. at 1315. The specification may reveal whether the patentee acted as his own lexicographer by importing a special definition to the claim term – in which case, the patentee's lexicography governs. Id. at 1316. Moreover, the specification can further reveal any intentional disavowal or disclaimer of claim scope. In such instances, "the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive." Id.

The prosecution history should also be taken into consideration if in evidence. Consisting of the complete record of the Patent and Trademark Office ("PTO") proceedings, "the prosecution history provides evidence of how the PTO and the inventor understood the patent." Id. at 1317. Unlike the specification, however, which represents the final product of ongoing negotiations between the PTO and the patentee, the prosecution history may lack clarity and serve as a less

helpful tool in claim construction. Id. Nonetheless, this part of the intrinsic evidence "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id.

The Federal Circuit cautioned against the use of extrinsic evidence during claim construction since this type of evidence suffers from certain inherent flaws which affect its reliability in a clam construction analysis. This class of evidence includes "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Id. at 1317 (quoting Markman, 52 F.3d at 980). Although extrinsic evidence may be useful, "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Id. at 1319. A court nonetheless is permitted to admit and use extrinsic evidence in its sound discretion, so long as the court remains mindful of the inherent flaws in this type of evidence and considers it accordingly. Id.

Phillips also clarified the role of dictionaries in claim construction. Placing undue reliance on dictionaries would improperly focus "the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." Id. at 1321. The "ordinary meaning" of the claim term is properly viewed as the "meaning to the ordinary artisan after reading the entire patent." Id. Moreover, dictionaries are naturally suspect as they "provide an expansive array of definitions" and often collect all uses of a word "from the common to the obscure." Id. This may result in extending "patent protection beyond what should properly be afforded by the inventor's patent." Id. at 1322. Despite such concerns, however, courts are not precluded from using dictionaries in the appropriate manner during claim construction analysis. Id.

Lastly, the court must be mindful of the well-settled rule "that while proper claim construction requires an examination of the written description and relevant prosecution history to determine the meaning of claim limitations, additional limitations may not be read into the claims." Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 831 (Fed. Cir. 2003); see also In re Donaldson Co., 16 F.3d 1189, 1195 (Fed. Cir. 1994) (noting the "general claim construction principle that limitations found only in the specification of a patent or patent application should not be imported or read into a claim.").

## II. The Disputed Claim Terms

### A. Soft Cup Frame and Nursing Breast Cup

Based on the parties' written submissions, and as clarified at the Markman hearing, the parties dispute the meaning of the terms "soft cup frame" and "nursing breast cup." The issues are whether the claim element "soft cup frame" must provide full breast support, and whether the claim element "nursing breast cup" must shape and support the breast or whether such elements need only provide access to the wearer's breast. The Court will review these two terms together as set forth below.

#### 1. *Claims 1 and 5*

The term "soft cup frame" can be found in claims 1 and 5, which state: "a soft cup frame having a base and a top, said soft cup frame attached at said base thereof to said front section of said elastic chest band and attached at the top thereof to said front end of said shoulder strap." According to Plaintiff, "a 'soft cup frame' is any structure that 'frames' the nursing mother's breast leaving an opening in the frame through which the baby may access the nipple. The soft cup frame is held in

place via the shoulder strap and the elastic chest band." Defendants' proposed construction states that: "a 'soft cup frame' is a structure of soft material that encircles the wearer's breast and covers the breast sufficiently to provide full breast support in accordance with the patent's alternative description of the elements as a 'soft cup breast support.' It has a lower edge or base attached to the front section of the elastic chest band and a upper extremity or top attached to the front end of the shoulder strap."

### 2.    Claim 12

The term "nursing breast cup" can be found in claim 12, which states: "a nursing breast cup having a base and a top, said nursing breast cup attached at said base thereof to said front section of said elastic chest band and attached at the top thereof to said front region of said shoulder strap." Plaintiff's proposed construction states that: "a nursing breast cup is any structure that covers all or part of the nursing mother's breast and has some provision for accessing the nipple for nursing. The nursing breast cup is held in place via that shoulder strap and the elastic chest band." Defendants propose the following construction of this claim: "a nursing breast cup is a cup-shaped structure of material that covers, shapes and supports the breast and includes a provision for providing access to the nipple for nursing. It has a lower edge or base attached to the front section of the elastic chest band and a upper extremity or top attached to the front end of the shoulder strap."

### 3.    Claim 19

Claim 19 contains both disputed terms, stating: "a nursing garment in accordance with claim 12, wherein said nursing breast cup is a soft cup frame." Plaintiff proposes that the term should read: "a soft cup frame is a type of nursing breast cup. A nursing breast cup is any structure that covers all or part of the nursing mother's breast and has some provision for accessing the nipple for nursing.

A soft cup frame is a specific type of nursing breast cup in which there is a structure that 'frames' the nursing mother's breast leaving an opening through which the baby may access the nipple." Defendants, however, construe the term as follows: "the nursing breast cup is a structure of soft material that encircles the wearer's breast and covers the breast sufficiently to provide full breast support in accordance with the patent's alternative description of a "soft cup frame" as a 'soft cup breast support.'"

### 4. *Claim Language*

Plaintiff contends that claims 1, 5 and 19 do not contain any language describing the "soft cup frame" as providing full breast support and that claim 12 does not have any language describing the "nursing breast cup" as shaping and supporting the breast. For this reason, Plaintiff argues, the Court should not read a limitation of full breast support into claims 1, 5 and 19 and a limitation of "shapes and supports the breast" into claim 19. Defendants contend that the language in claim 12 is similar to that of claim 5, except that claim 12 uses nursing breast cup instead of soft cup frame. According to Defendants, the plain meaning of "nursing breast cup" must include the concepts of a breast cup, which Defendants describe as a cup-shaped structure covering, shaping and supporting the wearer's breast and also contains some provision for providing access to the nipple for nursing purposes. Defendants claim that there is no express definition of nursing breast cup because the term is not in the specification, rather, it exists only in independent claim 12 and dependent claim 19, where it is defined as a soft cup frame. Plaintiff submits that the ordinary and customary meaning of breast cup is not so restrictive that it requires that it both shape and support the breast, rather the meaning of breast cup is a structure that covers all or part of a nursing mother's breast and has some provision for accessing the nipple for nursing.

### 5.     *Specification*

According to Plaintiff, in the patent specification and drawings, the phrase "soft cup frame" is a piece of fabric with an opening in the middle to provide access to the wearer's breast. '029 Patent, fig. 2, 3 and 4.  Plaintiff contends that the primary functional purpose of the claim element soft cup frame and/or nursing breast cup is to provide access to the wearer's breast for nursing purposes.  Plaintiff submits that "soft cup frame" in claims 1 and 5 provides access to the breast with an opening while "nursing breast cup" in claim 12 is a broader term covering both a soft cup frame and alternate ways of providing access for nursing.  Plaintiff argues that there are many ways to access the wearer's breast that may be used in conjunction with the invention, specifically, in the Summary of Invention (column 1, line 50 through column 2, line 19), where the invented garment is described as having a built-in nursing bra without limiting the nursing bra to any particular type. Plaintiff explains that this invention is more than just a soft cup frame as it includes other elements such as an internal nursing flap, an elastic chest band and a shoulder strap.

Plaintiff also contends that all elements of the garment work together to provide breast support and there is no basis for Defendants to imply that any one element of the garment by itself provides full breast support or shapes and supports the breast.  According to Plaintiff, the Summary of the Invention describes the whole garment providing full breast support because the built-in bra mechanism is built into the whole garment.  Defendants, however, claim that the specification requires "full breast support."  According to Defendants, the first reference to "soft cup frame" in the '029 patent refers to it as "soft cup frame 2," which corresponds to the portions of the drawing labeled "2."  Defendants claim that this reference number is also applied to "soft cup breast support 2" in the specification.  Thus, Defendants conclude that "soft cup frame" means the same thing as

"soft cup breast support,"and one of ordinary skill in the art must conclude that the soft cup frame is a breast support. During oral argument, the parties did not determine who "one of ordinary skill in the art" would be in this case. Rather, the parties agreed that it was not necessary to define or describe the experience one of ordinary skill in the art due to the nature of the terms before the Court. The parties agreed that the Court could look to the plain meaning of terms and the intrinsic evidence to make its decision as to the terms at issue.

Moreover, Defendants argue that the concept of breast support by the nursing bra is critical to the invention as the title of the invention is "Stretchable Nursing Tank Top with Invisible Breast Support." Plaintiff contends that the title of the invention does not limit the scope of the claims and is merely provided for classification purposes. However, Defendants submit that the patent states "the present invented garment provides . . . maximum important support that is needed for the breasts and the body." '029 Patent, col. 2, ln. 15-19. Defendants claim that the specification is devoid of any reference to the depicted opening in the soft cup frame, and that Plaintiff's argument that full breast support is provided by the overall garment conflicts with the specification, which states that the "built in bra mechanism gives full breast support." '029 Patent, col. 2, ln. 5-6.

### 6. *Prosecution File History*

Plaintiff explains that after initial rejection, the applicant submitted arguments for patentability without amending any claims. Plaintiff contends that in the claims elements argument, soft cup frame and nursing breast cup were not relied upon for patentability in order to distinguish the prior art and that there is nothing in the history to contradict the plain meaning of the claim language and patent specification. Defendants do not argue this point provided, however, that it is recognized that the specification equates "soft cup frame" with "soft cup breast support" and

9

describes the built-in bra. Plaintiff counters that although not in the original specification, nursing breast cup was in the prosecution history file when claims 12-19 were added, stating that the nursing breast cup has a feature allowing access to the mother's breast but need not be a soft cup frame.

### 7. *Conclusion*

During oral argument, the parties explained that the dispute regarding soft cup frame and nursing breast cup are similar. Plaintiff claims that the term nursing breast cup is broader than soft cup frame. Defendants claim that soft cup frame is different than nursing breast cup, not broader. Defendants also claim that the only element with relation to nursing breast cup is soft cup frame which requires breast support so therefore breast support is a requirement. This Court has considered both the Markman briefs supplied by all parties as well as oral argument. Accordingly, the Court finds that the evidence supporting Plaintiff's construction of "soft cup frame" and "nursing breast cup" is compelling, and will adopt Plaintiff's construction for both terms. The claim language, specification and prosecution history do not reflect a limitation that the nursing breast cup or soft cup frame must provide support, and the Court recognizes Plaintiff's position that the entire garment, not one single element, provides the described support.

### B. A Continuous Piece of Fabric

The parties also dispute the meaning of "a continuous piece of fabric," which is contained in claims 4, 9 and 16. The issue is whether a combined "back piece" and "nursing flap" must be made of one piece of fabric or may be made of two or more pieces of fabric sewn together to form a continuous piece of fabric. Claim 16, which is the same as claims 4 and 9, states that: "a nursing garment in accordance with claim 13, wherein said back piece back and internal nursing flap are one

10

continuous piece of fabric." Plaintiff contends that the construction should be read as: "the back piece and the nursing flap are sewn together to form a continuous piece of fabric," while Defendants' proposed construction is: "the back piece and internal nursing flap are a single continuous piece of fabric."

Plaintiff submits that this is a dependent claim, and that claims 4, 9 and 16 add a feature - that the separate pieces be sewn together - to form one continuous piece of fabric. According to Plaintiff, the back piece and internal nursing flap are separate pieces of fabric and the continuity is achieved by sewing the two pieces together. Plaintiff contends that normally one continuous piece of fabric is sewn or joined together and not cut from only a single piece of fabric. Defendants, however, contend that claims 4, 9 and 16 require the back piece and internal nursing flap to be formed from the same, single bolt of fabric. Defendants claim that to construe the term otherwise is to ignore the plan meaning of the term "one continuous."

In the specification, Plaintiff explains that in the alternate embodiment where the back piece is joined to the internal nursing flap, they are described as separate fabric panels. In figure 4, they are also shown as separate panels, however, both share a common reference numeral "8" which Plaintiff claims means the two panels could be sewn together as joined components. Defendants contend that construing a continuous piece of fabric conflicts with the specification, which states "for additional support, internal nursing flaps 8A and the back pieces of fabric 8B may alternatively be constructed using one piece of fabric extending around the torso, in the same manner that the elastic chest band extends around the torso." '029 Patent, col. 3, ln 24-8. Defendants argue that one piece simply means one piece and the drawings reflect only one piece of fabric and not two sewn together.

The Court agrees with Plaintiff's construction of "a continuous piece of fabric" to mean that

11

"the back piece and the nursing flap are sewn together to form a continuous piece of fabric." Based on the plain meaning of the term as well as the specification, a continuous piece of fabric requires at least one seam to join it together. It is not necessary that the two components - a back piece and the nursing flap - be cut from the same bolt of fabric. Rather, this can be accomplished by sewing or joining together the two parts to combine as a continuous piece of fabric.

### C.      Coupled To

Defendant Mothers Work also raises an issue with the construction of the term "coupled to" in claims 5 and 12. The dispute is whether the phrase requires a direct connection within the nursing bra of the claimed nursing garment between the back region of the shoulder strap to the back section of the elastic chest band. The claim phrase at issue is "said back region of said shoulder strap being coupled to said back section of said elastic chest band." Defendant Mothers Work proposes the following construction: "a direct connection within the nursing bra of the claimed nursing garment between the back region of the shoulder strap to the back section of the elastic chest band (if the back region of the shoulder strap and the back section of the elastic chest band are not attached to each other, a connecting element must extend directly from one to another)."

Plaintiff contends that the back region of the shoulder strap and the back section of the elastic chest band can be connected by either a direct or indirect connection. Plaintiff claims that the term "coupled to" has no particular meaning in the clothing art. Defendant Mothers Work, however, claims that there must be a direct connection between the back region of the shoulder strap and the back section of the elastic chest band within the nursing bra. Defendant Mothers Work also submits that the term "coupled to" requires more meaning than just "connected," since in some respect it could be said that all sections of the garment are coupled to all other sections.

Defendant Mothers Work contends that the only embodiment of the nursing garment in the '029 patent has an element that directly connects the back region of the shoulder strap and the back section of the chest band within the nursing bra which is attached to the fabric body. According to Defendant Mothers Work, the patent is devoid of any description or suggestion that the shoulder strap and elastic chest band could be coupled together indirectly through an intermediate component that is not part of the nursing bra. Moreover, Defendant Mothers Work claims that the patent describes the invention as the product of attaching a nursing bra to a separate fabric body, and so the term should be limited to those garments having a nursing bra with a direct connection within the bra from the back region of the shoulder strap to the back section of the chest band. Defendant Mothers Work points to the cross-sectional view of figure 4 of the '029 patent, which they claim demonstrates that the only contemplated connection between the back region of the shoulder strap and the back section of the chest band is through a direct connection within the nursing bra using a connecting element. Plaintiff, however, states that the '029 patent shows a preferred embodiment of the invention with a back piece connected (as shown in figure 4), which does not serve to limit claims 5 and 12 to the preferred embodiment. According to Plaintiff, reference to a figure in the specification as being "in accordance with the present invention" operates to incorporate any feature of the figure into the claims. Plaintiff contends that implying a negative limitation for the purpose of excluding any part of the fabric body to form part of the connection between the shoulder strap and the chest band is without justification. Plaintiff also claims that the prosecution history does not limit the interpretation of the phrase "coupled to" in claims 5 and 12, as there is no mention of the coupling of the elastic chest band to the back region of the shoulder strap in the file history.

Based on the evidence set forth in the record, the Court will adopt Plaintiff's proposed

construction for this term. Accordingly, in the phrase "said back region of said shoulder strap being coupled to said back section of said elastic chest band," there can be a direct or indirect connection within the nursing bra of the nursing garment between the back region of the shoulder strap to the back section of the elastic chest band.

### D. Fabric Body

The parties agree that the term "fabric body" should mean "one or more pieces of fabric joined together." Therefore, there is no longer a dispute as to this claim term.

## III. CONCLUSION

For the foregoing reasons, this Court adopts Plaintiff's construction of the terms soft cup frame, nursing breast cup, a continuous piece of fabric and coupled to. The parties have agreed to the meaning of the term fabric body as set forth above. An appropriate form of order accompanies this Memorandum Opinion.

Dated: March 5, 2007

                                                                                 s/ Garrett E. Brown, Jr.
                                                                                 GARRETT E. BROWN, JR., U.S.D.J.