UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LINE ROTHMAN and GLAMOURMOM LLC,,

    Plaintiffs

v.

TARGET CORP., et. al.,

    Defendants.

Civ. No. 05-4829 (GEB)

**MEMORANDUM OPINION**

**BROWN, C.J.**

    This matter comes before the Court upon the renewed motion for judgment as a matter of law of Plaintiffs Line Rothman and Glamourmom (collectively, "Plaintiff") that Defendant Leading Lady's ("Defendant") claimed prior invention developed by Haidee Johnstone is not prior art and cannot anticipate the claims of Plaintiff's 6,855,029 patent ("'029 patent")(docket # 319). The Court has decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny Plaintiff's motion.

**I.    BACKGROUND**

    Plaintiff filed a Complaint on October 7, 2005, alleging among other things that garments produced by Defendant infringed Plaintiff's ,029 patent  The complaint was amended on October 18, 2005, May 24, 2006, and March 23, 2007, to add certain Defendants and make certain corrections with respect to the names of others. In Defendant's answer to the third complaint, it alleged that the '029 patent was invalid under 35 U.S.C. Section 102. Defendant asserted that Haidee Johnstone, one of its employees, had developed an identical garment to the '029 patent known as Style No. 460 ("the 460 garment") in 1998. After a jury trial, the jury

concluded that the 460 garment did indeed anticipate the '029 patent. On November 19, 2007, Plaintiff filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b). Plaintiff argues that Defendants failed to produce legally sufficient evidence for a reasonable jury to have found that Ms. Johnstone's alleged prior art anticipated the '029 patent. As such, Plaintiff asserts that it is entitled to judgment as a matter of law.

**II.   Evidence of Prior Art**

Ms. Johnstone testified that she developed the 460 garment in 1998, after designing two other garments, based upon a trend she observed involved garments consisting of tank-tops with built-in shelf bras. Johnstone Tr., 33:5-8, Oct. 25 p.m. According to Johnstone, she first designed a sports bra, known as style no. D338. *Id*. at 34:19. The D338 is a sports bra containing a shelf bra. Ms. Johnstone testified that the D338 garment "has an elastic stretch band that goes under the bust. It has fasteners . . . and a strap. In this instance the sling is a piece of elastic, but it still serves to do the same function as [the sling in the accused garment]. It anchors the strap to the bra." *Id.* at 32:8-13.

Johnstone testified that she successfully sold the D338 to Target in 1997. *Id.* at 36:21. According to Johnstone, the D338 was digitized into the Leading Lady's "Gerber" computer system on February 2, 1998. Johnstone explained that because of the time involved in digitizing a garment, Leading Lady does not digitize the garments until they are ready for production. Johnstone Tr., 20:7-19, Oct 29 p.m. A pattern of the D338 from the Gerber system was entered into evidence, displaying the date of February 2, 1998. *See* Decl. of Christopher E. Torkelson, Exhibit 9.

Ms. Johnstone also testified that she assigned the D338 garment a "pattern number,"

which she noted in her reference book that she refers to as the "red book." Johnstone Transcript., 18:16-19-6, Oct. 29 a.m. According to Ms. Johnstone, she assigns all the design patterns a pattern number and notes the pattern number in her redbook. Ms. Johnstone testified that she has carried out this practice for approximately twenty years. The redbook was entered into evidence. *Id.* at 12:13-24,

Ms. Johnstone next designed garment 438, which she testified was successfully sold to JC Penny in 1998 and sold in the JC Penny catalogue in the spring of 1999. Johnstone Tr., 37:2-19; 45:6-7., Oct. 25 p.m., Defendant maintains that the 438 garment contains the same type of sling featured in the 460 garment. *See* Def. Br at 6. As the trial exhibit indicated to the jury, the pattern for garment 438 was digitized on October 7, 1998. *See* Decl. of Christopher E. Torkelson, Exhibit 9.

Within months of selling the 438 garment to JC Penny, in the spring of 1998, Johnstone testified that she attempted to sell JC Penny the 460 garment. Johnstone Tr., 55:2-8, Oct. 25 p.m. According to Ms. Johnstone, in 2005, a fire destroyed all samples of the 460 garment. Johnstone Tr., Oct. 25 p.m., 53:6-15. However, she testified further that the 460 garment is "identical" to the accused D219 garment. According to Johnstone, the D219 "has remained unchanged since the initial concept [of the 460 garment]." Johnstone Tr., 52:22-25. Defendant also submitted to the jury a memo that Ms. Johnstone testified listed different styles that she was working on as of November 5, 1998. The memo listed Garment 460 and described it as "camisole nursing – not in production." *See* Decl. of Christopher E. Torkelson, Exhibit 33. Johnstone testified that she used the word "camisole" interchangeably with the word tank top. Johnstone Tr., 59:24-25, Oct. 29, p.m. Another memo was also entered into evidence with a heading of "New Leading Lady

3

Products." *See* Decl. of Christopher E. Torkelson, Exhibit 36.  The memo described the 460 as a "full figure camisole nursing bra," and although it was not dated, Ms. Johnstone was certain it was from 1998 because it said "new leading lady products" and contained garments, such as the 460 garment that were all new as of that time.  Johnstone Tr., Oct. 29, p.m., 63.

      Ms. Johnstone testified that her attempts to sell the 460 garment to JC Penny in 1998 were unsuccessful, and as a result, she attempted to sell the garment to the store Dan Howard in 2000.  Johnstone Tr., Oct. 25, p.m., 55-56.  Johnstone elaborated that she attempted to sell the garment to Joseph Kirsch of Dan Howard "at least a couple of times."  She felt that the 460 garment was a "great" product, which inspired her to "keep trying" to sell it.  *Id.* at 57:13-15.  She testified further about a specific visit she made to Dan Howard on July 11, 2000, where she met with a new buyer by the name of Marilyn Clopton.  She also identified the plane ticket in her name that was purchased for her trip to visit Dan Howard in Chicago.   Johnstone Tr., Oct. 29, p.m., 67-68.  The jury was presented with a list of various samples, dated July 5, 2000,  that according to Johnstone,  needed to be completed for the July 11 meeting with Dan Howard.  *Id.* at 71.  Ms. Johnstone testified that item number four on the list, which was assigned a pattern number of 1345, referenced the 460 garment.  *Id.* at 74.  Ms. Johnstone again testified that the 460 garment presented to Miss. Clopton at the meeting has "remained unchanged since 1998" and is the same as the accused D219 garment.  *Id.* at 77.

      Ms. Johnstone testified that after her being unsuccessful in her attempts to sell the 460 garment to Dan Howard, she then attempted to then sell the garment to Target.   Johnstone testified at length about her courtship of Target.  She explained that she was initially unsuccessful when she attempted to sell Target the garment in 2001, but was later able to win

over a new buyer for Target in 2002. Johnstone Tr., Oct. 29, p.m., 82-89.

Defendant also entered into evidence a "provisional patent application" that was filed in October, 2003 by Defendant's then patent attorney on behalf of Ms. Johnstone. Ms. Johnstone testified that figure 13 in the application was a drawing of her 460 garment, that Defendant's attorney rendered based on a sample of the 460 that Ms. Johnstone provided to him. Johnstone *Id.* at 109.

In addition to hearing from Ms. Johnstone, the jury also heard from Ludmila Cerny-Bradik, Defendant's sample maker. Ms. Cerny-Bradik testified that she constructed the sample for the 460 garment in 1998, based upon the D338 and 438 garments. Cerny-Bradik Tr., Oct. 30, a.m., 39-41. She also testified that the July 5, 2000 memo put together by Ms. Johnstone was a "working schedule" for her to use in preparing the garments for the July 11, 2000 meeting with Dan Howard. *Id.* at 47-48. Ms. Cerny-Bradik testified further that she constructed samples of the 460 garment for that meeting and identified pattern no. 1345 on the memo as the pattern number of the 460 garment. *Id.* at 48-50. She confirmed that a fire destroyed the 460 garment, and finally testified that the 460 garment was the "exact[] same thing" as the accused D-219 garment, which had not changed since 1998. *Id.* at 55-58.

Defendant's president, Mark Corrado testified that he has been "very familiar" with the 460 garment since 1998 and has attended several meetings with Ms. Johnstone where he attempted to sell the garment. He specifically recalled showing the garment to former Dan Howard buyer Joe Kirsch before their July, 2000 meeting with Dan Howard, in part, because Mr. Kirsch did not like the garment. Mr. Corrado testified that samples of the 460 were brought to the July 11, 2000 meeting, and further that the 460 sample is "the exact same garment" as the

accused D219. Mr. Corrado also corroborated Ms. Johnstone's testimony regarding her attempts to sell the 460 garment to Target, after she was unsuccessful in her attempts to sell it to Dan Howard. Corrado Tr., Oct. 30, a.m., 89-93.

The jury also heard the video taped deposition Joseph Kirsch, former vice president and 45 year employee of Dan Howard. Mr. Kirsch testified that he recalled seeing the 460 garment many times prior to the July 11, 2000 meeting. He specifically recalled the July 11, 2000 meeting because his impression of the 460 garment was that it was "strange" and "unusual." He stated during the deposition that the accused garment was configured like the one he was shown during the 2000 meeting. Kirsch Tr., 6-14.

Marilyn Clopton, a former employee of Dan Howard also testified that she met with both Ms. Johnstone and Mr. Corrado in 2000 and recalled being shown a nursing bra camisole. Clopton Tr., 14-15. She identified a fax sent to her by Ms. Johnstone before the 2000 meeting that listed the garments (including the 460 garment) that she was going to be shown during the meeting. *Id.* at 21; 28-31. She also testified that the structure of the accused garments are "just like" the garment she was shown during the meeting. *Id.* at 33.

### III. DISCUSSION

#### A. Standard

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d

6

1153, 1166 (3d Cir. 1993); *Mandile v. Clark Material Handling Co.*, 131 Fed. Appx. 836, 838 (3d Cir. 2005). "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, at 1166, *citing Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992).

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, at 1166, *quoting Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978); *see also Raiczyk v. Ocean County Veterinary Hospital*, 377 F.3d 266, 268 (3d Cir. 2004) ("A judge may overturn a jury verdict only when, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.") (quotations omitted).

**B. Application**

Plaintiff argues that Defendants failed to prove by clear and convincing evidence that the '029 patent was anticipated by Ms. Johnstone's alleged invention and as such, the jury's verdict lacks the support of substantial evidence. The heart of Plaintiff's argument focuses on Plaintiff's failure to present the actual Johnstone garment at trial. Plaintiff argues that this failure was not cured by any of the five witnesses's testimony as to the existence of the Johnstone garment, because all of these witnesses were either interested parties or friends.

According to Plaintiff, Ms. Johnstone and Mr. Corrado's testimony are insufficient to demonstrate anticipation because as Leading Lady employees, they both possess a financial interest in the litigation of this case. Plaint Br. at 19. Plaintiff also attacks these witnesses'

7

credibility – highlighting: (1) their limited recollection at trial of Glamourmom's website in light of previous emails sent by each of them in the past evidencing their prior knowledge of the site; (2) the fact that when one of Defendant's former employees (Robin Pollack) emailed both of them and asked that they look at the Glamourmom website, neither commented that Ms. Johnstone had invented the exact same garment; (3) their testimony regarding the existence of the Johnstone garment in light of negotiations between Glamourmom and Leading Lady in 2003 to license the '029 patent; and (4) the fact that Johnstone applied for a patent on a garment in 2003, and cited the Glamourmom garment as prior art. *Id.* at 20-21.

    Plaintiff also asserts that Cerny-Bradik, Kirsch and Clopton's testimony fails to corroborate the testimony of Johnstone. Plaintiff argues that Cerny-Bradik's testimony that the current Leading Lady garment accused of infringement is the same as the one developed by Johnstone in 1998 should be discounted in light of the fact that the 1998 garment no longer exists and because more than nine years has passed since she constructed the garment. *Id.* at 22. Plaintiff also argues that the opinions of Kirsch and Clopton should be discounted because of the strong business relationship between Leading Lady and Dan Howard and because they were forced to recall from memory the original Johnstone garment, which they claim was offered to them for sale in 2000. *Id.* at 22-24. Plaintiff similarly argues that expert witness Burzynski's opinion failed to corroborate Ms. Johnstone's given that he never saw the original Johnstone garment and testified that he is close friends with Johnstone. *Id.* at 24-25.

    By contrast, Defendant argues that the testimony of five witnesses as to the development and reduction to practice of a physical sample of the 460 garment in 1998 and again in 2000 in addition to the documentary evidence produced at trial provided sufficient evidence for the jury

8

to reasonably conclude, as it did, that, Plaintiff's '029 patent was invalid because of anticipation. The Court agrees.

The law governing the anticipation of a patent is well-settled. Under 35 U.S.C. § 102, a person is entitled to a patent unless the invention was "described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). A finding of invalidity based on anticipation under 35 U.S.C. § 102 requires a determination that "each and every limitation is found either expressly or inherently in a single prior art reference." *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1243 (Fed. Cir. 2002) (quoting *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360 (Fed. Cir. 1998)). Because a patent that was issued by the Patent and Trademark Office enjoys a presumption of validity, the evidence supporting such a finding must be clear and convincing. *Id.* Whether a patent is anticipated by a prior art reference is a question of fact. *Schumer v. Lab. Computer Sys.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002).

An inventor's testimony alone cannot support a claim that prior art anticipated a patent. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). Rather, to satisfy the clear and convincing burden, and inventor's testimony must be supported by some corroborating evidence. *Id.* "[O]ral testimony of someone other than the alleged inventor may corroborate." *Trovan, Ltd. v. Sokymat Sa*, 299 F.3d 1292, 1303 (Fed. Cir. 2002). In evaluating the sufficiency of corroborating evidence, the Federal Circuit has set forth the following criteria, known as the "rule of reason" test:

(1) the relationship between the corroborating witness and the alleged prior user,

(2 )the time period between the event and trial,

>   (3) the interest of the corroborating witness in the subject matter in suit,
>
>   (4) contradiction or impeachment of the witness' testimony,
>
>   (5) the extent and details of the corroborating testimony,
>
>   (6) the witness' familiarity with the subject matter of the patented invention and the prior

use,

>   (7) probability that a prior use could occur considering the state of the art at the time,
>
>   (8) impact of the invention on the industry, and the commercial value of its practice.

*Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1371 (Fed. Cir. 1998)(*citing In re Reuter*, 670 F.2d 1015, 1021 n.9, 210 U.S.P.Q. (BNA) 249, 255 n.9 (CCPA 1981); *Price*, 988 F.2d at 1195 n.3.

It is not the role of the Court to determine the credibility of a witness on a Fed. R. Civ. P. 50(b) motion. *See Lightning Lube*, at 1166. Moreover, the Court certainly does not agree that Ms. Johnstone and Mr. Corrado's testimony were so lacking in credibility to warrant disturbing the jury's findings. It hardly seems unreasonable that Johnstone and Corrado would not specifically recall the details of Glamourmom's website as they saw it in 2002, and the fact that neither of them mentioned Johnstone's invention in their response to an internal email from an employee of Defendant's indicates little to nothing. This specific attack on these witnesses' credibility is further weakened by Plaintiff's failure to depose Ms. Pollack, despite having the opportunity to do so.[1] Moreover, the Court finds nothing suspect about Corrado's testimony that he was interested in potentially licensing Plaintiff's garment for the purpose of developing

---

[1] Plaintiff does not dispute Mr. Corrado's testimony that he provided Plaintiff with Ms. Pollack's information, nor does Plaintiff dispute Defendant's assertion that Plaintiff failed to contact her to have her deposed.

10

Defendant's nursing pad business. The fact that Corrado may not have revealed his specific motivation in wanting to partner with Plaintiff during their negotiations is of little evidentiary value to Plaintiff. Johnstone's listing of Plaintiff's garment in her patent application, which was later rescinded, is also insufficient to render the jury's verdict unreasonable. The jury's determination that the Johnstone garment anticipated the '029 patent stands independently of whatever the Patent and Trade Office may or may not have determined on their own.

Plaintiff's attack on Ms. Cerny-Bradik's testimony is unconvincing. While the Johnstone garment was constructed nine years ago, Ms. Cerny-Bradik is in a particularly strong position to recall the garment, as she sewed the garment together herself. Ms. Cerny-Bradik constructed several samples of the 460 garment as well as the accused garment, making her testimony comparing the two garments particularly credible, notwithstanding the fact that as a Leading Lady employee, she is an interested party.

Finally, the testimony of Clopton and Kirsch – two disinterested witnesses further militates against disturbing the jury's verdict. Plaintiff analogizes to *Oney v. Ratliff,* 182 F.3d 893 (Fed. Cir. 1999) in an attempt to demonstrate that these witnesses are interested and their testimony cannot be relied upon to uphold the jury's verdict. In *Oney*, the District Court granted summary judgment to the defendant, who was being sued for infringement of the plaintiff's T-shirt design. The district court relied upon the affidavits of the defendant's sample maker and silkscreen printer, who testified that they had constructed T-shirts based upon the defendant's designs before the plaintiff's priority date. The court also relied on the affidavits of two retailers who stated that they had purchased the defendant's accused T-shirts before the defendant's priority date. *Id.* at 895. The Federal Circuit overturned the District Court's grant of summary

judgment in part because key documents that the defendant submitted to evidence the sale of the accused T-shirts actually indicated that different style shirts were sold, and as a result, one of the retailers retracted her affidavit and the other retailer revised her affidavit. *Id.* at 895-96.

The facts of *Olney* are readily distinguishable from those before the Court on this motion. Importantly, the defendant in *Olney* was appealing from a grant of summary judgement before facts could be developed at trial. Moreover, documents in the record suggested a genuine issue of material of fact – so much so that one of the witnesses retracted her affidavit, which had previously corroborated the defendant's claim that his invention predated that of the plaintiff's. Here, the jury has had the benefit of hearing five witnesses, all of whom corroborate each other's testimony regarding Ms. Johnstone's invention. Further, Defendant has produced notes and documents to lend additional support the witnesses testimony regarding the Johnstone garment. The Court finds Plaintiff's citation to *Finnigan Corp. v. ITC*, 180 F.3d 1354 (Fed. Cir. 1999) similarly unhelpful in this area.[2] The present case presented disputes of material fact and issues of credibility that were properly before the jury for resolution. The Court finds no reasonable basis to disturb the jury's verdict.

**CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's motion for judgment as a matter of law. An appropriate form of Order accompanies this Opinion.

---

[2] In *Finnigan Corp.*, the Federal Circuit overturned the lower court's finding of anticipation, where the lower court relied entirely on the testimony of one witness regarding that witness' own work, with no other corroborating evidence. 180 F.3d at 1370.

Dated: April 16, 2008,

                                                                              s/Garrett E Brown, Jr.
                                                            GARRETT E. BROWN, JR., U.S.D.J.