UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINE ROTHMAN and GLAMOURMOM LLC,, | |
| Plaintiffs | Civ. No. 05-4829 (GEB) |
| v. | |
| TARGET CORP., et. al., | **MEMORANDUM OPINION** |
| Defendants. | |

**BROWN, C.J.**

This matter comes before the Court upon the renewed motion for judgment as a matter of law of Plaintiffs Line Rothman and Glamourmom (collectively, "Plaintiff") that Plaintiff did not commit inequitable conduct in prosecuting the 6,855,029 patent ("'029 patent")(docket # 321). The Court has decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny Plaintiff's motion.

**I.   BACKGROUND**

Plaintiff filed a Complaint on October 7, 2005, alleging among other things that garments produced by Defendant Leading Lady ("Defendant") infringed Plaintiff's '029 patent. (Compl. ¶ 1.). The complaint was amended on October 18, 2005, May 24, 2006, and March 23, 2007, to add certain Defendants and make certain corrections with respect to the names of others. In Defendant's answer to the third complaint, it alleged that the '029 patent was invalid under 35 U.S.C. Section 102 due to obviousness and because the patent was anticipated by prior art. Defendant also alleged that Plaintiff engaged in inequitable conduct during the prosecution of the '029 patent. After an 11 day trial, the jury rendered a verdict, finding in part that Plaintiff

engaged in inequitable conduct in prosecuting the '029 patent. On November 19, 2007, Plaintiff filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b). Plaintiff argues that Defendant failed to produce legally sufficient evidence for a reasonable jury to have found that Plaintiff's conduct was inequitable during the prosecution of the '029 patent. As such, Plaintiff asserts that it is entitled to judgment as a matter of law.

**II.  Evidence of Inequitable Conduct**

In 2003, Plaintiff and Defendant engaged in discussions for Defendant to license Plaintiff's pending patent on the '029 garment. At that time, Plaintiff was in the process of working with their then patent attorney, Alan Jacobson, to obtain a patent for Mrs. Rothman's garment. Mr. Jacobson testified that he had been practicing patent law since the nineteen-seventies, but had never previously prosecuted a garment patent. *Id.* at 101:8-17. Plaintiff's patent was preliminarily rejected by a PCT (international) examiner on grounds of obviousness in light of prior art. To rebut the examiner's rejection, Jacobson responded in part that

> [n]ursing garments are highly specialized garments that are designed produced and sold by a small segment of the clothing industry. Nursing garments, as distinguished from maternity garments, are not analogous prior art to women's garments in general. A nursing bra has a detachable nursing flap, structural feature not found in a regular bra. Therefore, it is improper to combine a prior art reference from nursing garments with a prior art reference from garments generally, with no connection to nursing garments.

Decl. of Christopher Torkelson, exhibit 7. In attempting to further distinguish Mrs. Rothman's invention from the prior art, Jacobson stated that ""[n]o reasonable combination of Clark and Cordova suggests itself from the references themselves." *Id.* at exhibit 9. On cross-examination, Jacobson conceded that he did not consult any nursing garment designer to verify the accuracy of this statement. Jacobson Tr., 99-101. Jacobson testified that On July 14, 2003, he forwarded a

copy of the PCT (international) examiner's preliminary opinion rejecting the '029 patent because of obviousness to Defendant. Jacobson Tr., 80:6-11, Nov 1, 2007.

The following day, Defendant sent Plaintiff a sample of one of Defendant's nursing garments (the "438 garment") that Defendant believed was prior art that was very similar to Mrs. Rothman's garment. *Id.* at 80:13-17. Jacobson testified that he thought Defendant was making a "bad faith argument" in sending him the 438 nursing bra and indicating that the garment with "minor modifications" would be the same as Mrs. Rothman's garment. In Mr. Jacobson's view, the 438 garment was just a normal nursing bra. *Id.* at 108:7-11. Mr. Jacobson testified that he inspected the garment on a flat surface, but did not put the garment on a bust, and did not notice that the garment contained two layers of fabric in the front.[1] *Id.* at 82-84. Jacobson however testified that the 438 garment still differs from the Rothman garment because it only contains one nursing flap. *Id.* at 86:16-17.

In a letter to Mr. Jacobson dated July 28, 2003, Defendant's lawyer Stanley Dub stated that Defendant had decided not to enter into a licensing agreement with Plaintiff for the '029 patent, in part, because Defendant did not believe Plaintiff would receive a useful patent. Decl. of Paul Hyun, exhibit 19, docket # 321. Mr. Dub also stated that Defendant became aware of Plaintiff's "'tank top with nursing bra'" around the beginning of 2003, after which Defendant developed its own prototype of a different tank top with nursing bra product, which it showed to customers who submitted orders for the product. *Id.*

On July 30, 2003, Mr. Jacobson returned to Defendant the 438 garment, and stated in an

---

[1] Jocobson agreed on cross examination that the 438 garment contains shoulder straps, a soft-up frame, and an elastic chest band, all of which are claim elements of the '029 patent.

accompanying letter his belief that Mrs. Rothman's garment was indeed patentable, notwithstanding Defendant's prior art in the 438 garment.  Jacobson did not elaborate, but invited Defendant to contact him, should Defendant wish to know Plaintiff's specific position as to why the Rothman garment was patentable.   Jacobson elected not to send the 438 garment to the patent office and did not cite the garment as prior art.

In another subsequent letter dated August 4, 2003, Stanley Dub informed Mr. Jacobson that after doing further research company-wide, he discovered that Defendant had actually initiated discussions with Target in August, 2002 regarding its tank top nursing bra.  Dub added that the garment shown to Target was based upon the Defendant's Director of Design's "own conception . . . without any prior knowledge of [Plaintiff's] product."  *Id.* at 92:19-20 to 20-11; Decl. of Chris Torkelson, exhibit 20.  Mr. Jacobson testified that he found Dub's claim that Defendant developed this garment on their own to be "incredulous," given the timing of the disclosure – occurring right after licensing negotiations between the two companies had died, and given that Plaintiff had never heard anything about this invention prior to receiving the August 4 letter.  *Id.* at 105:13-18.  Mr. Jacobson testified that as a result, he did not follow up with Defendant to inquire into the legitimacy of the claimed invention and did not report the claimed invention to the Patent Office.  *Id.* at 99:1-7.

On August 7, 2003, Jacobson filed a "petition to make special" with the PTO.  Pursuant to that application, Mr. Jacobson was required to attest that he "made a careful and thorough search of the prior art."  *Id.* at 97.  On August 29, 2003, Defendant's patent attorney, Mr. Vickers, sent Mr. Jacobson publications that Mr. Vickers believed displayed prior art of Plaintiff's patent application, consisting of outer garments that included inner breast support and

4

a nursing flap.  Mr. Jacobs did send this information to the PTO on September 4, 2003.  *Id.* at 102:17-23.

In December, 2003, Mr. Jacobson was informed in a letter written by Mr. Dub that Defendant filed its own patent application for the Johnstone garment.  *Id.* at 110:11-23.  However, despite learning of the Johnstone patent application, Jacobson testified that he did not contact Defendant to inquire into Defendant's claimed invention.  *Id.* at 112:16-21.

## III. DISCUSSION

### A. Standard on a Motion for a Judgement as a Matter of Law

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993); *Mandile v. Clark Material Handling Co.*, 131 Fed. Appx. 836, 838 (3d Cir. 2005).  "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, at 1166, *citing Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 190 (3d Cir. 1992).

"The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Lightning Lube*, at 1166, *quoting Patzig v. O'Neil*, 577 F.2d 841, 846 (3d Cir. 1978); *see also Raiczyk v. Ocean County Veterinary Hospital*, 377 F.3d 266, 268 (3d Cir. 2004) ("A judge may overturn a jury verdict only when, as a matter of law, the record is

critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.") (quotations omitted).

**B. Law of Inequitable Conduct**

Patent applicants have a duty to prosecute patents with candor, good faith and honesty. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). This duty may be breached by "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false information, coupled with an intent to deceive." *Id.* "One who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with an intent to mislead the PTO." *Id.* An accused infringer "seeking to have a patent declared unenforceable has a heavy burden to meet." *Hoffmann-La Roche v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003).

The first step in performing an inequitable conduct analysis is to determine whether a threshold level of materiality and intent to deceive has been established through clear and convincing evidence. *Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1128-29 (Fed. Cir. 2006). To determine whether a reference is material, courts refer to the materiality standard set forth in PTO Rule 56. *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123 (Fed. Cir. 2006). Information is deemed material if:

> It is not cumulative to information already of record or being made of record in the application, and
>
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a

>>claim; or
>
>>(2)	It refutes, or is inconsistent with, a position the applicant takes in:
>
>>>(I)	Opposing an argument of unpatentability relied on by the Office, or
>
>>>(ii)	Asserting an argument of patentability.

37 C.F.R. § 1.56(b) (2007).  "[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct." *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 822 (Fed. Cir. 1992).

"Even if an omission is found to be material, the omission must also be found to have been made with the intent to deceive." *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1190 (Fed. Cir. 2006).  However, in an inequitable conduct claim, the Federal Circuit has made clear that intent to deceive cannot be "inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *Purdue*, 438 F.3d at 1134 (quoting *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996)).  To satisfy this requirement, "the involved conduct, viewed in light of all the evidence, including evidence of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 439 F.3d 1335 (Fed. Cir. 2006) (quoting *Paragon Podiatry Lab. v. KLM Lab.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993)).  "In a case involving the nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Molins Plc v. Textron*, 48 F.3d at 1181. While "direct proof of wrongful intent is rarely available, [it] may be

inferred from clear and convincing evidence of the surrounding circumstances." *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1329 (Fed. Cir. 1998)(quoting *LaBounty Mfg. v. United States ITC*, 958 F.2d 1066, 1075 (Fed. Cir. 1992).

"When materiality of information is close . . . a patent applicant should err on the side of disclosure." *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1363 (Fed. Cir. 2006). "Where an applicant knows of information the materiality of which may so readily be determined, he or she cannot intentionally avoid learning of its materiality." *Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001). Rather, an attorney has a duty to investigate when he is made a aware of specific information and is in a position to reasonably ascertain its materiality. *Id.* at 1382. An attorney can not "cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art." *Id.* at 1383 (*quoting FMC Corp. v. Hennessy Industries, Inc.*, 836 F.2d 521, 525 (Fed. Cir. 1987). However, when a patent applicant reasonably believes a reference is not material or cumulative of prior art, no duty to investigate is triggered. *See Flex-Rest, LLC* . 455 F.3d at 1362-63.[2]

"Once threshold findings of materiality and intent are established, the trial court must weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." *Id.* at 1363(quoting *Purdue Pharma*, 438 F.3d at 1128). "The tribunal must then

---

[2] Noting the "very deferential standard of review [employed while reviewing] inequitable conduct determinations," in *Flex-Rest, LLC v. Steelcase, Inc.*, the Federal Circuit held that the district court did not abuse its discretion in finding that the applicant possessed no duty to investigate prior art because the applicant reasonably believed that the prior art was cumulative. Even though the court found some inconsistencies with the evidence, because the district court applied and interpreted the proper law, the Federal Circuit upheld the trial court's finding. 455 F.3d 1363.

carefully balance the materiality and intent: the less material the proffered or withheld information, the greater the degree of intent that must be proven. In contrast, a lesser degree of intent must be proven when the information has a great degree of materiality." *N.V. Akzo v. E. I. Du Pont de Nemours & Co.*, 810 F.2d 1148, 1153 (Fed. Cir. 1987).

### C. Plaintiff's Arguments

Plaintiff argues that Defendant's 438 garment was not material to patentability because it neither anticipated nor rendered obvious the '029 patent. Plaint. Br. at p. 5. In support, Plaintiff asserts that the 438 garment: (1) contains only one nursing flap, as opposed to the two that are present in the independent claims (claims 1, 5, and 12) of the '029 patent; (2) lacks a fabric body - also a limitation of claims 1,5, and 12; and (3) "is neither a patent nor a publication," but rather a commercial product, providing no teaching beyond its structure and function. *Id.* at 5-6. At best, Plaintiff argues that the 438 garment is cumulative to other art made of record during the '029 patent application. *Id.* at 7-8. Plaintiff also argues that it lacked the intent to deceive the patent examiner. In support of this argument, Plaintiff cites the letter Mr. Jacobson sent to Defendant where he stated his belief that the 438 garment did not render the Rothman garment unpatentable, and offered to explain said belief to Defendant in the event Defendant should want an explanation. *Id.* at 9.

Plaintiff also argues that the record is devoid of substantial evidence "that plaintiffs recognized the materiality" of the 460 garment. *Id.* According to Plaintiff, "Mr. Jacobson had no reason to believe that the [460 garment] was a material reference, since he had no reason to believe it even existed." *Id.* at 10. Plaintiff claims it was never informed of this prior invention during the time period when Plaintiff and Defendant were negotiating a license agreement, and

9

further points to the lack of documented internal communications between employees of Defendant evidencing the existence of the garment prior to June, 2002.  *Id.*  Plaintiff also points to two letters that Defendant sent to Plaintiff on July 28, 2003 and August 4, 2003, both of which were written after Defendant terminated licensing negotiations with Plaintiff.  In the first letter, Mr. Dub stated that Ms. Johnstone produced "a prototype of a different tank top with nursing bra product" after becoming aware of Plaintiff's "tank top with nursing bra product," around the beginning of 2003."  Decl. of Paul Hyun, exhibit 19, docket 321.  Dub then stated in the second letter that, after the issue had gained greater circulation throughout the company, it was brought to his attention that Defendant initiated conversations to sell Target its garment, which was based upon its Director of Design, Ms. Haidee Johnstone's "own conception . . . without any prior knowledge of [Plaintiff's] product" in August, 2002.  Decl. of Paul Hyun, exhibit 20; Plaint. Br at 11.  Plaintiff also points to a letter it wrote to Defendant where it alleges that the garment Defendant presented to Target in August, 2002 was likely Plaintiff's garment.[3]  *Id.* at 12.  According to Plaintiff, Defendant never responded to said letter by presenting any further information about the Johnstone design.  For the reasons summarized, Plaintiff argues that there was insufficient evidence that Mr. Jacobson was aware of the teachings of the 460 garment to enable him to determine the garment's materiality.  *Id.* at 12-13.

Plaintiff also argues that the there was no substantial evidence produced demonstrating that Plaintiff withheld the 460 garment with the intent to deceive the PTO.  *Id.* at 13.  According to Plaintiff, Mr. Jacobson's testimony "makes clear that he did not cite the 460 bra to the PTO

---

[3] This letter does not appear in the record according to Plaintiff's citation.  However for the purpose of this opinion, the Court accepts Plaintiff's description of said letter in its brief.

because he reasonably questioned the reliability and credibility of the reference." *Id.* Specifically, Plaintiff notes again Defendant's failure to alert Plaintiff to the existence of the 460 garment until after negotiations between to the two companies had ceased and argues that Jacobson acted reasonably in concluding from the timing of said disclosure that it was made in faith. *Id.* Under these circumstances, Plaintiff argues, citing *Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351 that, Mr. Jacobson was under no duty to investigate the 460 garment. *Id.* at 15. Plaintiff also points out that while Mr. Jacobson did not cite the 460 garment in the IDS as he did other references brought to his attention by Defendant, Mr. Jacobson cited both letters from Stanley Dub is his Statement in Support of Petition to Make Special. *Id.* at 16. For these reasons, Plaintiff argues that the jury's finding of inequitable conduct is not supported by sufficient evidence.

**D. Defendant's Arguments**

By contrast, Defendant argues that the evidence at trial, in harmony with the jury's verdict on anticipation, demonstrates that the 438 garment contained all the elements of the '029 patent. Def. Br. at 11-12. Defendant maintains that while Mr. Jacobson asserts that he did not notice that the 438 garment had two layers, he also did not take any steps to determine the number of layers. *Id.* at 12. Defendant further argues that while Plaintiff elected not send the 438 garment to the PTO, Plaintiff did send other less relevant prior art to the PTO during that same period. *Id.* at 13. Defendant argues that this evidence supports the jury's finding of inequitable conduct, because "[t]he strong inference is that Mr. Jacobson was selective in his disclosure of prior art, disclosing prior art, like the catalog pages, when he did not believe the disclosure would hurt his client's position, but withholding evidence, like the 438 nursing garment, when he saw that it

would hurt Plaintiffs' position." *Id.* According to Defendant, this inference is buttressed by the fact that Mr. Jacobson construed the claims of the '029 patent as broadly as possible when assessing possible infringement, but construed the claims very narrowly when assessing prior art. *Id.* at 14. Defendant maintains that this practice was in conflict with basic principles that require a broad duty to disclose. Defendant adds that the timing of Plaintiff's failure to disclose the 438 garment to the PTO – contemporaneous with the PCT (International) Examiner's rejection on obviousness grounds, as well as Defendant's letter of July 28, 2003, ending further discussions with Plaintiff regarding licensing, a reasonable inference could be drawn that Mr. Jacobson intentionally elected not to disclose the 438 garment for the purpose of helping Plaintiff's patent application succeed. *Id.*

Defendant further argues that Mr. Jacobson engaged in inequitable conduct in making representations to the PTO regarding the field of nursing garments that had no basis in fact. Specifically, Defendant points to Jacobson's response to the Examiner's rejection of the Rothman garment, which was based on the combination of the Clark and Cordova patents. Mr. Jacobson stated that "[t]he prior art of women's garments is not always analogous prior art to that of nursing garments. Nursing garments are highly specialized garments that are designed, produced and sold by a small segment of the clothing industry. Nursing garments as distinguished from maternity garments, are not analogous prior art to women's garments in general." *Id.* at 15; Jacobson Tr., 99-101. Jacobson also stated that a "nursing garment designer would not naturally seek to combine" the Cordova and Clark garments. Decl. Of Chris Torkelson, exhibit 9. Given that Mr. Jacobson never consulted a single nursing garment designer before making this statement and only this filed one nursing garment patent application himself,

12

Defendant argues that Jacobson made these statements in bad faith to convince the patent examiner to issue a patent, so that Plaintiff could use said patent in an overreaching manner against the public. *Id.* at 15-16.

Defendant also argues that the jury's decision is supported by Plaintiff's failure to follow up with Defendant after Defendant informed Plaintiff that Ms. Johnstone had designed the exact same garment years earlier. Defendant notes that Plaintiff still did not research the existence of the 460 garment or disclose the existence of the garment to the PTO, even after Defendant filed a patent application for the 460 garment. *Id.* at 16. Citing *Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, Plaintiff asserts that Mr. Jacobson possessed a duty to investigate the 460 garments, given the disclosures that were made to him, and his failure to do so constituted inequitable conduct. *Id.*

### E. Analysis

The Court begins by rejecting Plaintiff's contention that the Court is free to disregard the jury's verdict "because it is a question for the Court to decide." Plaint. Br. at 4. While a charge of inequitable conduct is generally submitted to the Court and not the jury, in this case, the issue was expressly presented to the jury by the parties without objection. Throughout the course of this litigation, Plaintiff has sought a trial by jury on all issues, including inequitable conduct. In doing so, Plaintiffs consented to a jury determination on the issue of inequitable conduct. *See Fed. R. Civ. P. 39C.* As such, the Court conducts its inquiry into Plaintiff's 50(b) motion by judging the sufficiency of the evidence, viewed in the light most favorable to the non-movant. *See Lightning Lube*, Inc., 4 F.3d at 1166.

Considering the arguments of both parties and reviewing the evidence in the light most

favorable to the non-movant, the Court finds that the jury's verdict on inequitable conduct is supported by sufficient evidence. The Court notes that, in conducting this review, it is not the Court's role to "weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube*, Inc., 4 F.3d at 1166. The jury was presented with substantial evidence, in the form of five witnesses in addition to other documents supporting Defendant's assertion that Ms. Johnstone invented the same garment as the '029 patent in 1998. *See* Opinion on Judgment as a Matter of Law, docket # 338. Defendant puts much weight on Mr. Jacobson's testimony that because of the timing of the disclosure, he did not find Defendant's claim that Ms. Johnstone invented the garment prior to Mrs. Rothman's invention to be credible. Such a *preliminary* conclusion may very well have been reasonable, as Plaintiff suggests.[4] However, Jacobson's failure to do any research to confirm this initial conclusion was not reasonable – especially after he learned that Defendant initiated its own patent application for that particular garment. Lending further support to the jury's conclusion is the fact that Mr. Jacobson asserted that he never noticed, or perhaps more importantly, did not take any steps to notice that Defendant's 438 garment contained two layers.

Alternatively, even if the question of inequitable conduct in the present case were one for the Court and not presented to the jury by both parties, the Court finds that there was significant

---

[4] The Court is not persuaded by Plaintiff's analogy to *Flex-Rest* for the proposition that because Jacobson did not perceive the prior art presented to him to be credible, he was under no duty to disclose the art or research it any further. *See* Plaint. Br. at 15. Importantly, the Federal Circuit noted in that case that "[a] very deferential standard of review . . . governs inequitable conduct determinations." Because the Federal Circuit found evidence in the record suggesting that the prior art that the applicant failed to research or submit to the patent office was of dubious import, the Circuit Court there held that the district court's finding of no inequitable conduct was not clearly erroneous.

clear and convincing evidence to support a finding of inequitable conduct. While inequitable conduct is frequently asserted in patent cases, it is rarely proven. The Court specifically notes that the present matter was one of the very few where it is convinced that inequitable conduct was proven by clear and convincing evidence. After having heard and evaluated the witnesses' testimony, the Court found Ms. Johnstone's testimony to be credible concerning her prior art. The Court however did not so credit the countervailing testimony of Mr. Jacobson and finds strong circumstantial evidence of deceptive intent. Given Mr. Jacobson's admitted total lack of experience with nursing garments (in addition to Mr. and Mrs. Rothman's inexperience in the field), the Court notes that despite Mr. Jacobson's response to the PCT examiner's initial rejection of the '029 patent, where Mr. Jacobson represented that nursing garments are very specialized garments that are not analogous to women's garments generally, he never consulted an expert in the field before making this statement. The Court also notes that he failed to disclose to the PTO the 438 garment or the alleged existence of the 460 garment, which Defendant maintained was identical to the '029 patent. Indeed Mr. Jacobson still failed to inform the PTO of Defendant's claimed invention, even after Jacobson learned of Defendant's patent application. These failings on the part of Mr. Jacobson, when considered in light of all of the above and of an applicant's duty of candor and to disclose known prior art, in addition to the demeanor of the witnesses and the inferences drawn from the testimony, support a finding by clear and convincing evidence that the applicant and counsel engaged in inequitable conduct in the prosecution of the '029 patent.

   To be sure, Plaintiff could have avoided a finding of inequitable conduct had it disclosed both the 438 garment as well as its knowledge of Defendant's claim to the 460 garment. *See*

*Flex-Rest, LLC* at 1363 ("When materiality of information is close . . . a patent applicant should err on the side of disclosure"). However, it chose not to do so; Mr. Jacobson never followed up with Defendant to press Defendant on the authenticity of the 460 garment, and never inspected the 438 garment thoroughly enough to notice that it had two flaps. As noted, "[w]here an applicant knows of information the materiality of which may so readily be determined, he or she cannot intentionally avoid learning of its materiality." *Brasseler*, 267 F.3d at 1380. Given the timing of Plaintiff's failure to disclose Defendant's prior art to the PTO – occurring shortly after licensing negotiations between Plaintiff and Defendant had ceased, in addition to Plaintiff's failure to research Defendant's claims of prior art, the Court finds that the jury's finding of inequitable conduct is supported by substantial evidence. Thus, were the question of inequitable conduct one for the Court and not the jury, the Court would have reached the same conclusion.

**CONCLUSION**

Reviewing all evidence in the light most favorable to the non-movant, this Court holds that the jury's finding that Plaintiff's conduct in prosecuting the '029 patent is supported by sufficient evidence. For the foregoing reasons, the Court will deny Plaintiff's motion for judgment as a matter of law. An appropriate form of Order accompanies this Opinion.

Dated: May 6, 2008.

                                                      s/Garrett E. Brown, Jr.
                                                      GARRETT E. BROWN, JR., U.S.D.J.