**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINE ROTHMAN and GLAMOURMOM, LLC,<br><br>　Plaintiffs,<br><br>　v.<br><br>TARGET CORPORATION, et al.,<br><br>　Defendants. | CIVIL ACTION NO. 05-4829 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

　　The plaintiffs, Line Rothman and Glamourmom, LLC ("Glamourmom" and collectively "Plaintiffs") commenced this patent infringement action in 2005 alleging that several defendants were infringing U.S. Patent No. 6,855,029 ("the '029 Patent"). (Dkt. entry no. 1, Compl.; dkt. entry no. 3, Am. Compl.)  In 2007, on the eve of trial, Plaintiffs settled with a subgroup of the defendants, Mothers Work, Inc., n/k/a Destination Maternity Corp. ("Destination Maternity") and Macy's Department Stores, Inc. f/k/a Federated Department Stores, Inc. (collectively "Settling Defendants").  (Dkt. entry no. 409-1, Certif. of Michael Rothman, Ex. A, 9-18-07 Term Sheet; id. at Ex. B, 9-18-07 Tr.; id. at Ex. C, Settlement Agreement; id. at Ex. D, 10-22-07 Stip. & Order of Dismissal.)  Before the Court is Glamourmom's motion to enforce the settlement agreement.  (See dkt. entry no. 407, Notice of Mot. to Enforce Settlement.)  For the reasons that follow, that motion will be denied.

## I. BACKGROUND

Plaintiffs commenced this action in October of 2005 against various defendants alleging infringement of the '029 Patent — owned by Line Rothman and entitled "Stretchable Nursing Tank Top With Invisible Breast Support." (See Am. Compl. at 6-7.)  In September of 2007, shortly before trial, Plaintiffs settled with the Settling Defendants.  This settlement was described in open court before the Magistrate Judge on September 18, 2007 and was outlined in a term sheet also dated September 18, 2007 ("Term Sheet").  (See 9-18-07 Term Sheet; 9-18-07 Tr. )  The settlement was memorialized in a settlement agreement dated October 1, 2007 ("Settlement Agreement").  (See Settlement Agreement.)  The Court filed a stipulation of dismissal as to these Settling Defendants on October 22, 2007.  (See 10-22-07 Stip. & Order of Dismissal.)

The pertinent terms of the Settlement Agreement and Purchase Agreement are as follows.  The Settlement Agreement defines "Accused Products" as follows:

> all nursing garments imported, made, manufactured, distributed, sold, or offered for sale in the past, present or future by [Settling Defendants] that have the features described by the claims of the '029 Patent . . . . [Settling Defendants] warrant and represent, to the best of their knowledge, that all "Accused Products" have been identified for Plaintiffs and accounted for by [Settling Defendants], including all data of all sales of the same, through August 15, 2007.  [Settling Defendants] acknowledge that Plaintiffs are relying upon such warranty in consideration for this Agreement.

(Settlement Agreement at ¶ 2(C).)  The Settlement Agreement also provides that the Settling Defendants "recognize the validity and enforceability of the '029 Patent."  (Id. at ¶ 3.)  In fact, the Term Sheet, which is incorporated by reference into the Settlement Agreement (see id. at ¶ 9), further states that the terms of settlement "are not contingent upon the validity of Glamourmom's intellectual property now or in the future."  (9-18-07 Term Sheet at ¶ 3(f).)

2

The Settlement Agreement contains covenants not to sue, which provide, in part,

> [Settling Defendants] covenant not to commence any legal or administrative action or proceeding relating to the patent-in-suit, including but not limited to one asserting the invalidity of the patent-in-suit, unless and until Plaintiffs commence an action or threaten an action or proceeding asserting that [Settling Defendants] are directly or indirectly (contributorily or by inducement) infringing the patent-in-suit or any continuation thereof by making, using, selling, offering to sell or importing into the United States any product other than an Accused Product.  If Plaintiffs commence [such] an action or proceeding or threaten [such] an action or proceeding . . . then [Settling Defendants] shall have the right to assert, by affirmative defense, counterclaim or request for declaratory relief, any defenses, including but not limited to non-infringement and invalidity of the patent-in-suit or any continuation thereof.

(Settlement Agreement at ¶ 4(B).)  Destination Maternity also warranted and represented:

> H. . . . that it has accurately and completely identified all Accused Products and reported all unit sales and related revenue through any of [Destination Maternity's] resale distribution channels of Accused Products at issue in the Lawsuit . . . through August 15, 2007.
>
> I. . . . that, as of August 15, 2007, its aggregate on-order and inventory unit amounts for the allegedly infringing products was approximately 76,199 units.  [Destination Maternity] also represents and warrants that it has made no further orders since such date and will not make, manufacture or sell any further orders of any additional allegedly infringing products, except for the 76,199 units which [Destination Maternity] shall be permitted to sell off as referenced in Paragraph 7B herein.

(Id. at ¶¶ 5(H), 5(I).)

In consideration of the Settlement Agreement's requirements of the Settling Defendants, Plaintiffs agreed to a number of terms as well.  Plaintiffs released any and all claims against Settling Defendants that were "asserted in and/or relating to the claims in this Lawsuit and/or any claims under the '029 Patent or any continuation thereof in connection with the Accused Products."  (Id. at ¶ 6(A).)   Plaintiffs also agreed that

3

"they will not seek to initiate any actions that would require [Settling Defendants'] further participation in this Lawsuit or in any other pending or future litigation or dispute relating to Plaintiffs' policing of the intellectual property in suit." (Id. at ¶ 6(D).)  However, Plaintiffs' release in Paragraph 6(A) and covenant in Paragraph 6(D) are expressly contingent on Settling Defendants' "refrain[ing] from the manufacture, marketing or sale of the Accused Products other than as set forth in Paragraph 5(I) hereinabove." (Id. at ¶¶ 6(A), 6(D).)

The Settlement Agreement also contained payment terms. In consideration of the releases provided to the Settling Defendants by Plaintiffs, Destination Maternity — on behalf of the Settling Defendants — agreed to make several one-time payments: (1) one dollar to Line Rothman; (2) 1.5 million dollars to Glamourmom; and (3) $260,000 to Glamourmom "as a pre-paid royalty for the remaining units of allegedly infringing Accused Products described in paragraph 5(I) hereinabove." (Id. at ¶¶ 7(A), 7(B).)

Concurrently with the Settlement Agreement, Destination Maternity and Glamourmom executed a purchase agreement dated October 1, 2007 ("Purchase Agreement"). (See Certif. of Michael Rothman, Ex. G, Purchase Agreement.)  Under the Purchase Agreement, Destination Maternity agreed to make a one-time payment of $500,000 to Glamourmom "in exchange for [Glamourmom's] limited non-exclusive license of its trademark for the term of this Agreement." (Id. at 1.)  Destination Maternity also agreed to purchase a minimum of $3,217,500 worth of Glamourmom's nursing tank products over the term of the Purchase Agreement. (Id. at 1-2.) The terms of the Purchase Agreement were "not contingent upon the validity of

[Glamourmom's] intellectual property now or in the future." (Id. at 9.)  The Purchase Agreement was set to terminate when the three-year minimum purchase amount was satisfied. (Id. at 11.)

Following the execution of the Settlement Agreement and Purchase Agreement, Plaintiffs proceeded to trial against the other, non-settling defendants.  Ultimately, on November 5, 2007, a jury found that all but one non-settling defendant infringed the '029 Patent but that the '029 Patent was invalid for obviousness. (See dkt. entry no. 312, Special Verdict Form.)  In February 2009, the Court of Appeals for the Federal Circuit ("Federal Circuit") upheld the jury's finding that the '029 Patent was invalid for obviousness. See Rothman v. Target Corp., 556 F.3d 1310 (Fed. Cir. 2009).  The Supreme Court of the United States denied the writ of certiorari in November of 2009.  See Rothman v. Target Corp., 558 U.S. 1024 (2009).

There appears to be no dispute that following that verdict through the beginning of 2010, prior to the Purchase Agreement's expiration, the Settling Defendants complied with their obligations under the Purchase and Settlement Agreements.  As the expiration of the Purchase Agreement approached, Glamourmom and Destination Maternity engaged in negotiations towards a licensing arrangement of Glamourmom's design and trademark. (See dkt. entry no. 416-1, Supp'l Certif. of Michael Rothman, Ex. A, Email chain between Tom Montagnino and Ron Masciantonio.)  However, the parties failed to reach an understanding regarding the continuation of their business relationship following the Purchase Agreement.

5

On December 14, 2010, Glamourmom sent Destination Maternity a cease and desist letter asserting that Destination Maternity "is currently and has for a period of time manufactured, marketed and sold products . . . which are substantially similar to and contained within the intellectual property defined as 'Accused Products' within the [Settlement Agreement ] . . . as detailed in the claims and specifications" of the '029 Patent and U.S. Patent No. 7,076,809 ("the '809 Patent").  (See Certif. of Michael Rothman, Ex. J, Cease & Desist Correspondence at 12-14-10 Letter.)  Glamourmom "direct[ed]" Destination Maternity to provide an accounting of the violating sales.  (Id.)  On December 21, 2010 Destination Maternity communicated its refusal to provide the requested information and stated, in part, that (1) the patents at issue are invalid and (2) its products do not infringe those patents.  (Id. at 12-21-10 Letter.)[1]  Glamourmom responded on January 14, 2011 by reiterating its demand for an accounting, and Destination Maternity again refused to accede to that demand.  (Id. at 1-14-10 Letter; id. at 1-19-11 Letter.)

Destination Maternity never provided the requested accounting, and, according to Glamourmom, Destination Maternity has continued to manufacture and sell "Accused Products."  (Dkt. entry no. 409, Glamourmom's Br. at 4-5.)  On November 7, 2013, Glamourmom filed the instant motion to enforce the settlement agreement.  (See Notice of Mot. to Enforce Settlement.)

---

[1]  Destination Maternity explained that its assertion that the '809 Patent was invalid based on Glamourmom's "admi[ssion]" in its letter "that the claims of [the '809 Patent] are not distinct from those of the invalid '029 patent."  (See Cease & Desist Correspondence at 12-21-10 Letter.)

## II. PARTIES' ARGUMENTS

Glamourmom argues that, following the termination of the Purchase Agreement, Destination Maternity breached Paragraph 5(I) of the Settlement Agreement by "selling (a) products which are, or are the functional equivalent of, 'additional allegedly infringing products,' i.e., products which have the features described by the claims of the '029 Patent, and/or (b) 'Accused Products.'" (Dkt. entry no. 416, Glamourmom's Reply Br. at 2; see also Glamourmom's Br. at 4-5.)[2]  In response to Destination Maternity's assertions that the parties did not agree to a permanent injunction under the terms of the Settlement Agreement, Glamourmom argues, "[i]f paragraph 5(I) were meant to apply only to existing inventory, there would have been no need to prohibit the making and manufacture of additional such products." (Glamourmom's Reply Br. at 3.)

Glamourmom further contends that the subsequent conduct of the parties, which is indicative of their intent, demonstrates their understanding that the Settlement Agreement prohibited the future sale of Accused Products. (Id. at 3-5.) Specifically, as the Purchase Agreement neared expiration, Destination Maternity engaged in licensing discussions with Glamourmom. Glamourmom argues that "there would have been no reason for Destination Maternity to seek a license from Glamourmom unless Destination Maternity understood the Settlement Agreement to continue to prohibit Destination Maternity's manufacturing,

---

[2] According to Glamourmom, "[t]he terms 'allegedly infringing products' and 'Accused Products' appear to be used interchangeably in the Settlement Agreement." (Glamourmom's Reply Br. at 2.)

7

marketing or sale of 'Accused Products' after the '029 Patent has been invalidated invalidated [sic]." (Glamourmom's Br. at 9; see also Glamourmom's Reply Br. at 4-5.)

Glamourmom argues that the '029 Patent's invalidity is no defense to Destination Maternity's compliance with the injunction on the manufacture and sale of Accused Products. According to Glamourmom, "the case law is clear that where an agreement settling patent infringement litigation imposes restrictions on an accused infringer and expressly indicates that such restrictions are without regard to whether the patent in suit is later found to be invalid, a subsequent finding of patent invalidity will not affect the enforceability of a settlement agreement and the obligations imposed upon the alleged infringer." (Glamourmom's Br. at 7-8 (citing Hemstreet v. Spiegel, Inc., 851 F.2d 348 (Fed. Cir. 1988); Int'l Signal Co. v. Marconi Wireless Tel. Co., 104 A. 378, 380 (N.J. Ch. 1918)).) Glamourmom further argues that, here, the Settlement Agreement contemplated the potential invalidity of the '029 Patent, so Destination Maternity cannot rely on this subsequent invalidity to avoid its obligations.  (Id. at 9; Glamourmom's Reply Br. at 6-7 (citing W.L. Gore & Assocs. v. C.R. Bard, Inc., 761 F.Supp. 376 (D.N.J. 1991) ).)

Destination Maternity argues in response that it never agreed to — and consequently the Settlement Agreement does not include any provision for — a permanent injunction "from future manufacture and sale of any products having features described by the '029 patent, regardless of the '029 patent's validity or enforceability."  (Dkt. entry no. 413, Destination Maternity's Opp'n at 5-7.)   Destination Maternity explains that Paragraph 5(I) is the only provision that imposes restrictions on its ability to make or sell products.  However,

Paragraph 5(I) "makes no reference to 'Accused Products'" and instead "refers to a narrower subset of the 'allegedly infringing products' that remained in [Destination Maternity's] inventory as of a specified date." (Id. at 7-10.) Destination Maternity also contends that its negotiations with Glamourmom in the spring of 2010 as the Purchase Agreement was nearing expiration do not establish its belief that it was subject to a permanent injunction by the Settlement Agreement. (Id. at 18-19.) Destination Maternity was interested in trademark licensing and that "there was still potential value in continuing this business relationship." (Id. at 19.)

In the alternative, Destination Maternity argues that even if it had agreed to such an injunction, the injunction cannot be enforced in light of the invalidity of the '029 Patent. (Id. at 10.) Destination Maternity does not dispute "precedent holding that when a settlement agreement's payment provisions expressly are not contingent upon the validity of the underlying asserted patent, then the defendant cannot rely on federal patent policy to avoid its obligation to make continued payments under the agreement's terms." (Id.) Injunctions are distinct from payment provisions and implicate a "different set of concerns." (Id. at 10-11, 17-18.) Destination Maternity contends that injunctions are only proper to protect enforceable patent rights, and "courts have held that injunctions, including those that the parties agree to in a settlement context, should be vacated once the underlying asserted patent is deemed invalid or unenforceable." (Id. at 11-13 (citing Life Techs., Inc. v. Promega Corp., 189 F.R.D. 334, 337 (D. Md. 1999)).) Enforcing the injunction in these circumstances "would be inequitable, because this would render [Destination Maternity] 'the only entity

9

unable to manufacture or sell products covered by the ['029] patent.'" (Id. at 18 (quoting Promega, 189 F.R.D. at 337).) Destination Maternity argues that sufficient grounds exist for vacating the injunction under Federal Rule of Civil Procedure ("Rule") 60(b)(5), "a significant change of circumstances." (Id. at 14.) "Courts have held that if a patent forming the basis of a permanent injunction is later deemed unenforceable or invalid, this constitutes a material change in circumstances that warrants relief from that injunction pursuant to Rule 60(b)(5)." (Id. at 14 (citing Promega, 189 F.R.D. at 337; Flexiteek Ams., Inc. v. PlasTEAK, Inc., No. 08-60996, 2012 WL 5364263, at *9 (S.D. Fla. Sept. 10, 2012)).)

### III.   LEGAL PRINCIPLES AND DISCUSSION

As a general matter, federal patent policy does not override the strong public interest in upholding settlement agreements. See Hemstreet, 851 F.2d at 350-51. "Although the federal patent policy prevails over 'the technical requirements of contract doctrine,' . . . such policy must occupy a subsidiary position to the fundamental policy favoring the expedient and orderly settlement of disputes and the fostering of judicial economy." Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc., 489 F.2d 974, 978 (7th Cir. 1973) (quoting Lear, Inc. v. Adkins, 395 U.S. 653, 670 (1969)).

The parties dispute the impact of the Federal Circuit's decision in Hemstreet on their dispute. In Hemstreet, the parties reached a settlement of their patent dispute, and, as part of that settlement, the defendant agreed to make payments to the plaintiff for a license under the patents-in-suit for a period of years "without regard to any subsequent determination of the validity or enforceability of the patent[s]." Id. at 349-50. The patents at issue were later held

to be unenforceable, and the defendant sought relief from its obligations to make license payments under the settlement agreement. Id. at 349. The Federal Circuit emphasized the "compelling public interest and policy in upholding and enforcing settlement agreements." Id. at 350. "Having specifically voluntarily agreed to make payments even if the patents subsequently were held unenforceable, it ill behooves [the defendant] to renege on that commitment merely because the situation it contemplated has occurred." Id. The court further rejected the defendant's efforts to rely on federal patent policy to avoid these obligations, stating, "[t]he vehicle of settlement would be a useless item if contracts, such as the one here, were subject to invalidation after they were consummated. We think the federal patent policy should not be carried so far." Id. at 351 (quoting Ransburg Electro-Coating Corp., 489 F.2d at 978).

Destination Maternity asserts that Hemstreet is limited to the payment provisions of a settlement agreement, as injunctive provisions raise unique considerations. The Court doubts the validity of this argument. Seemingly, Hemstreet on its face would apply to injunctive provisions of settlement agreements as well if the settlement agreement clearly contained restrictive covenants or a permanent injunction relating to patents that may later be deemed invalid. Cf. W.L. Gore, 761 F.Supp.376 (where parties' settlement of patent dispute involved both payment and injunctive provisions, court ruled that change in law did not warrant relief from injunction). However, the Court need not resolve the application of Hemstreet to a settlement's injunctive provisions because this Settlement Agreement does not contain a

permanent injunction prohibiting future sales.[3] Thus, the Settlement Agreement does not create a potential conflict between settlement policy and federal patent policy.

In the Settlement Agreement, the parties agreed to payment provisions for alleged past infringement and existing inventory. In the Purchase Agreement, Destination Maternity and Glamourmom detailed the terms of their business arrangement for the next three years. There is no clear provision addressing the relationship between the parties after those three years except for language anticipating that the parties may sue one another in the future. (See Settlement Agreement at ¶ 4(B) (Destination Maternity agrees "not to commence any legal or administrative action or proceeding relating to the patent-in-suit . . . unless and until Plaintiffs commence an action or threaten an action or proceeding" alleging that Destination Maternity is infringing the patent-in-suit).) Notably, once Plaintiffs commence or threaten to commence an action — as Glamourmom has done by way of this motion — Destination Maternity is permitted to raise the defense of invalidity of the patent-in-suit. (Id.) This provision expressly contemplates the possibility of litigation after the obligations of the agreements are performed and envisions that the invalidity of the patent-in-suit may be raised as a defense. If the Settlement Agreement in fact permanently enjoined Destination Maternity's manufacture and sale of Accused Products, it is illogical for it to state that Destination Maternity could raise invalidity of the patent as a defense in a subsequent action. The Purchase and Settlement Agreements, in conjunction, provide that (1) Settling Defendants will compensate Plaintiffs

---

[3] Even if the parties had contracted for a permanent injunction relating to the patent, the Court notes that the injunction could not endure beyond the life of the patent. See Aronson v. Quick Point Pencil Co., 440 U.S. 257, 264-65 (1979) (citing Brulotte v. Thys Co., 379 U.S. 29, 33 (1964)).

12

for past infringement; (2) Glamourmom and Destination Maternity will enter into a three-year purchasing and licensing arrangement; (3) after those three years, future disputes may arise about infringement; and (4) the invalidity of the patent may be raised as a defense in future litigation. Plaintiffs have no further enforcement rights under the Settlement Agreement.

In contrast to the unambiguous language relating to future litigation between the parties, absent from the Settlement Agreement is a clear prohibition on Destination Maternity's manufacturing or selling anything that could ever be considered an Accused Product or an allegedly infringing product.[4] And the definition of "Accused Products" will not permit an interpretation that forecloses future disputes between the parties invoking the same old patent. Glamourmom seeks a permanent injunction — a significant prohibition when measured by an invalid patent. The parties are sophisticated litigants who negotiated the settlement at arm's length. The Court will not give the Settlement Agreement a tortured reading to find such a restriction in the face of provisions suggesting a contrary result and in the absence of clear drafting.

Glamourmom has also argued that the Court should view the parties' subsequent conduct as an indication of their intent to enjoin Destination Maternity from manufacturing and selling products that would fall within the definition of Accused Products. Specifically, Glamourmom relies on the fact that, as the end of the Purchase Agreement drew near, Destination Maternity engaged in negotiations with Glamourmom about the possibility of

---

[4] Based on the Court's resolution of this dispute, the Court declines to determine what, if any, difference is ascribed in the Settlement Agreement to the meanings of "Accused Products" and "allegedly infringing products."

obtaining further licenses on Glamourmom's intellectual property.  The Court concludes that this subsequent conduct is too vague and imprecise to draw any inferences as to the intentions and beliefs of the parties.  For example, these preliminary negotiations, as evidenced in an email chain, do not reference any specific patent, and the cease and desist correspondence between the parties revealed that Glamourmom, in addition to the invalidated '029 Patent, had at least one other related patent, the '809 Patent.  (See Cease & Desist Correspondence at 12-14-10 Letter.)  Moreover, while licensing Glamourmom's design is mentioned in these negotiations, the reference to the design is lumped into a larger discussion concerning the possible future licensing of Glamourmom's trademark.  (See Email chain between Tom Montagnino and Ron Masciantonio.)  The use of Glamourmom's trademark is unrelated to the validity of the '029 Patent, and thus, Destination Maternity's attempt to negotiate a trademark license reveals nothing regarding its views about its obligations vis-à-vis the '029 Patent.  Thus, this parol evidence of the parties' subsequent conduct lacks the clarity that would be necessary to ascribe any intent on the parties.

   The Court is also mindful that Destination Maternity, for business reasons, may have engaged in negotiations related to designs that would fall under the '029 Patent's claims even if Destination Maternity did not believe itself subject to a permanent injunction.  Destination Maternity had an interest in continuing the relationship with Glamourmom for a variety of reasons — e.g., licensing Glamourmom's trademark — and it may have made a business decision to avoid a conflict with Glamourmom about the '029 Patent.  The Court simply cannot discern clear evidence of intent from these negotiations.

Destination Maternity's response to Glamourmom's cease and desist letters, on the other hand, is far from ambiguous as to its intentions and beliefs about its future obligations. In that series of letters, Destination Maternity explicitly relays to Glamourmom its belief that Glamourmom's patents are invalid. (See Cease & Desist Correspondence at 12-21-10 Letter.) Unlike the parties' licensing negotiations, the subsequent conduct of the parties relating to the cease and desist correspondence is far from imprecise. Destination Maternity unequivocally expressed its belief that it was not constrained by the invalid '029 Patent. Thus, consideration of this parol evidence — the subsequent conduct of the parties — does not alter the Court's conclusion that the parties did not agree to a consent injunction.[5]

While Glamourmom does not have enforcement rights under the Settlement Agreement and thus does not have a remedy from this Court, Glamourmom may have other avenues of redress, perhaps in a new action alleging trade dress infringement or infringement of its '809 Patent. The Court makes no statement regarding Glamourmom's likelihood of

---

[5] Even if the Settlement Agreement had contained a consent injunction, a consent injunction is subject to modification under Rule 60(b)(5) if a movant establishes that "a significant change of circumstances warrants a revision of the decree." Promega, 189 F.R.D. at 336 (quoting Rufo v. Inmates of Suffolk Cnty., 502 U.S. 367, 380 (1992)). "Reopening a consent decree under Rule 60(b) is 'extraordinary' relief and 'may be granted only upon a showing of exceptional circumstances.'" W.L. Gore, 761 F.Supp. at 381 (quoting Mayberry v. Maroney, 558 F.2d 1159, 1163 (3d Cir. 1977)). Courts have "recognize[d] a distinction between consent decrees that reflect an agreement negotiated by the parties, and decrees ordered by the court." See id. at 380-81 (citing United States v. Armour & Co., 402 U.S. 673, 681-82 (1971)). Unlike court-imposed decrees, consent decrees reflect a negotiated compromise between the parties, and, as a result, the court in W.L. Gore explained that it may be "unfair for a court to modify a consent decree based on a negotiated compromise." Id. at 381. However, a court in the District of Maryland, when presented with a consent decree following settlement and a subsequently invalidated patent, ruled that the unenforceability of the underlying patent constituted "a significant change in circumstances requiring equitable relief under Rule 60(b)(5)." Promega, 189 F.R.D. at 339. Because the Settlement Agreement does not contain a consent injunction, the Court need not determine whether a subsequently invalidated patent is a "significant change of circumstances" for Rule 60(b) purposes.

success or failure in any such new action.  Suffice it to say, for the purposes of this motion, the Court must put on blinders and look solely at the negotiated terms of the settlement.  And Glamourmom cannot obtain the relief it seeks under the Settlement Agreement.

Destination Maternity has requested, in reliance on the Purchase Agreement, that Glamourmom pay its fees for defending this motion.  (See Destination Maternity's Opp'n Br. at 26-27 (quoting Purchase Agreement at 10 ("[I]n the event that litigation of any nature with respect to the performance of [Destination Maternity] of its obligations hereunder is initiated, then and in such event, the prevailing party in such litigation shall be responsible for the non-prevailing party's costs and expenses, including reasonable attorney's fees.")).)  The Court denies this request.  There is no similar fee provision in the Settlement Agreement.  While the two agreements are related, more is required to impute the fee shifting provision into the Settlement Agreement, which is not — by any means — a model of clarity.  Therefore, the general rule applies, and each party will bear its own expenses in connection with this motion.

### IV.   CONCLUSION

For these reasons, Glamourmom's motion to enforce the settlement agreement (dkt. entry no. 407) will be denied.  The Court will issue an appropriate Order.

  s/ Mary L. Cooper  
  **MARY L. COOPER**  
  United States District Judge

Dated: May 30, 2014